UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Anthony Steven Hill,

        Petitioner,

v.

State of Minnesota,

        Respondent.

Court File No.: 12-CV-3166 (JNE-SER)

**<u>REPORT AND RECOMMENDATION</u>**

---

Anthony Steven Hill, *Pro Se*, 229986, MCF-Faribault, 1101 Linden Lane, Faribault, Minnesota 55021.

Jean E. Burdorf and Lee W. Barry, III, Esqs., Hennepin County Attorney's Office, 300 South Sixth Street, Suite C-2000, Minneapolis, Minnesota 55487, for Respondent.

Matthew Frank and Jennifer R. Coates, Esqs., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, Minnesota 55101, for Respondent.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Petitioner Anthony Steven Hill's ("Hill") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") [Doc. No. 1]. The case has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (C) and Local Rule 72.1. For the reasons set forth below, the Court recommends that the Petition be denied, and that the action be dismissed with prejudice.

## I. BACKGROUND

On May 27, 2009, a Minnesota state court jury found Hill guilty of first degree assault of a peace officer, as defined by Minn. Stat. § 609.221(2)(a).[1] (Pet. at 1);[2] *State v. Hill*, No. 09-1946, 2010 WL 5290066, at *1 (Minn. Ct. App. Dec. 28, 2010) *rev. denied* (Mar. 15, 2011). Hill was sentenced to 120 months imprisonment, and is currently serving his sentence at the Minnesota Correctional Facility in Faribault, Minnesota. (Pet. at 1); *Hill*, 2010 WL 5290066, at *2.

Hill appealed his conviction to the Minnesota Court of Appeals, which affirmed the conviction. *See Hill*, 2010 WL 5290066. The Minnesota Court of Appeals summarized the factual background of the case as follows:

> Hill's conviction arises from an incident at his home in the city of Edina on September 20, 2008. Police officers were dispatched to the home in response to a report that a woman, whom the caller identified as "mother," may have been shot in the head with a BB gun. Upon their arrival, the officers knocked and announced their presence at the front and back doors to the residence. Officer Joy Fragodt looked through the window to the left of the front door and observed a man, later identified as Hill, standing at the top of the stairs. He was holding a handgun at his side in his right hand. Through the closed door, Officer Fragodt ordered Hill to put down the handgun and come to the door, but Hill hid the handgun behind his back. A woman then walked down the stairs and opened the front door. Officer Fragodt asked her whether she was injured; she said she was not. Officer Fragodt then asked the woman about the man with the handgun. The woman responded by saying that she had to get back to her children, and she ran up the stairs.
>
> The police officers entered the home through the front door and followed the woman up the stairs. Officer Eric Carlson saw Hill, pointed his handgun at him, and yelled for him to show his hands. Hill retreated into a bedroom and

---

[1] Minn. Stat. § 609.221(2)(a) provides: "Whoever assaults a peace officer or correctional employee by using or attempting to use deadly force against the officer or employee while the officer or employee is engaged in the performance of a duty imposed by law, policy, or rule may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $30,000, or both."

[2] Citations to the Petition refer to the CM/ECF pagination not the original pagination of the document.

closed the door. Officer Carlson, Sergeant Philip Larsen, and Officer James Rygg stated that they were police officers and instructed Hill to open the door. Hill did not do so. Sergeant Larsen kicked in the door, and the three officers entered the bedroom with their weapons drawn. Hill suddenly stepped out of a walk-in closet, assumed a firing stance, and aimed a handgun at the officers. Officer Carlson began to pull the trigger on his weapon when he heard another officer deploy a Taser. The Taser struck Hill, who fell to the floor and dropped his handgun. The officers tackled Hill, deployed the Taser on him again when he resisted, and placed him in handcuffs. When Officer Rygg secured the handgun, a .44 caliber revolver, he observed that the cylinder to the handgun was slightly ajar and contained one round in the one o'clock position, which would be the next round to rotate into firing position.

After the officers subdued Hill, Officer Carlson told Hill "how close he came to dying." Hill responded by saying, "I wish you had killed me." Officer Carlson later brought Hill to the police station. While another officer processed Hill's booking, Officer Carlson made another comment to Hill about "how close you came to being dead." Hill responded by saying that he knew the people outside the bedroom were police officers and that he was sorry for putting them at risk. . . .

In September 2008, the state charged Hill with assault in the first degree, use of deadly force against a peace officer, a violation of Minn. Stat. § 609.221, subd, 2(a) (2008). In October 2008, Hill moved to suppress all evidence that police obtained inside his home and the two statements he made in response to Officer Carlson's comments. In March 2009, the district court denied his suppression motions.

The case was tried to a jury over four days in May 2009. Hill did not testify. The jury returned a verdict of guilty. The district court sentenced Hill to 120 months of imprisonment.

*Id.* at *1–2.

In his direct appeal, Hill challenged his conviction asserting four reasons why his conviction should be reversed: (1) denial of his pretrial motion to suppress (warrantless entry and pre-Miranda statement); (2) failure to instruct the jury on a lesser-included offense; (3) error in responding to a question from the jury; and (4) sufficiency of the evidence to support the conviction. *Id.* at *2–7. The Minnesota Court of Appeals rejected Hill's contention that the evidence was insufficient to convict him of attempted first degree assault. *Id.* at *2–3. Hill

contended that he could not have caused death or great bodily harm to the officers because the cylinder of his handgun was not seated when it was found on the floor. *Id.* at *3. The court disagreed because there was evidence that the gun was capable of discharge when the cylinder was properly seated, and the jury could infer that Hill "could have fired and handgun and that he made a substantial step toward doing so." *Id.* (citation omitted). There was also evidence that Hill fired the handgun at his home earlier that day. *Id.* Overall, the evidence showed Hill stepped out of a closet, aimed a handgun at three police officers, assumed a firing position with a handgun that was loaded with a round in the position directly next to the firing position, and Hill knew he was pointing the gun at police officers. *Id.*

Hill challenged the trial court's denial of his motion to suppress evidence obtained as a result of the police officers' warrantless entry into his home. *Id.* The Minnesota Court of Appeals held that facts existed to "cause a reasonably cautious police officer to conclude that an emergency existed inside the home that merited a warrantless entry." *Id.* at *4. The facts included a dispatch call advising that a person's mother may have been shot in the head; an officer observed a man inside the home with a handgun; the man did not comply with requests to open the door; he appeared to hide the gun behind his body; and the woman who came to the front door rushed up the stairs without answering the officer's questions. *Id.*

Hill also challenged the denial of his motion to suppress a statement he made to Officer Carlson at the police station. *Id.* at *5. Hill stated that he knew police officers were in his home, and he was sorry for putting them in danger. *Id.* The Minnesota Court of Appeals held that Officer Carlson's pre-*Miranda* warning remark to Hill during booking was not the functional equivalent of interrogation because it was not reasonably likely that the remark would elicit an incriminating response. *Id.*

4

The court also held that the trial judge did not err by failing to instruct the jury on a lesser-included offense because Hill waived that right when he did not seek the instruction. *Id.* The Minnesota Court of Appeals further held that the trial court did not err in responding to the jury's question "[i]f an empty gun is pointed at another person, is this considered the use of deadly force?" *Id.* at *6. Hill contended the court should have answered "no" rather than rereading only a portion of the jury instruction. *Id.* The court disagreed for two reasons. *Id.* First, whether the handgun was loaded and whether an unloaded handgun constitutes deadly force are issues within the province of the jury to decide, and the evidence did not show that the handgun was empty. *Id.* Second, the unread portion of the original jury instruction was not relevant to a question about an empty handgun.[3] *Id.* On March 15, 2011, the Minnesota Supreme Court denied review of the decision on Hill's direct appeal. *See id.*

Hill sought post-conviction relief in the district court, but he was denied relief. *See* (Pet. at 2–3). In connection with post-conviction relief, Hill raised three grounds on appeal: (1) the trial court failed to hold a probable cause hearing; (2) ineffective assistance of trial and appellate counsel; and (3) the post-conviction court denied him an evidentiary hearing. *Hill v. State*, No. A11-2191, 2012 WL 3101273, at *1 (Minn. Ct. App. July 30, 2012) *rev. denied* (Oct. 24, 2012). Hill contends he was entitled to a probable cause hearing after the trial court ruled on his suppression motion. *Id.* at *2. The court held that Hill did not request a probable cause hearing after the suppression motion was denied, likely because his probable cause argument depended

---

[3] The unread portion of the jury instruction consisted of two sentences: "The intentional discharge of a firearm in the direction of another person constitutes deadly force. Great bodily harm means bodily harm that creates a high probability of death, causes serious permanent disfigurement, or causes a permanent or protracted loss or impairment of the function of any part of the body, or other serious bodily harm." *Hill*, 2010 WL 5290066, at *6.

5

on the success of having the evidence suppressed. *Id.* at *2 n.2. Therefore, he was not entitled to a hearing on probable cause. *Id.*

The Minnesota Court of Appeals also stated that Hill's post-conviction appeal contained "a laundry list of acts that he claims constituted ineffective assistance of counsel, many of which relate to trial strategy." *Id.* at *3. The court held that Hill's claims were waived because his claims were not "supported with facts, authority or any argument about how the outcome of the trial was affected by counsel's challenged conduct[.]" *Id.* Hill's only claim regarding appellate counsel, on appeal of the post-conviction court decision, was that counsel failed to obtain a transcript of the 9-1-1 call and dispatch. *Id.* Hill did not argue that having the transcript would have affected his direct appeal, therefore, that claim was also denied. *Id.* Finally, the court held that Hill did not brief, and therefore waived, his claim that the post-conviction court erred by not holding an evidentiary hearing. *Id.* The Minnesota Supreme Court denied review on October 24, 2012. *See id.*

Hill filed his habeas corpus petition with this Court on December 20, 2012. (Pet. at 1). Hill alleged the following grounds for relief: (1) conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (2) conviction obtained by use of evidence obtained pursuant to an unlawful arrest; (3) plain error on the definition of deadly force; (4) denial of effective assistance of counsel; and (5) insufficient evidence. (*Id.* at 4–18). For the reasons discussed below, the Court recommends that Hill's Petition be denied.

## II. DISCUSSION

### A. Procedural Default

When a prisoner has attempted to raise a claim in state court, but the state court determined that the prisoner defaulted the claim under a state procedural rule, federal courts will

not, as a general matter, consider the claim on habeas review. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006) ("We are prohibited from reviewing an issue that the state court has resolved on an adequate and independent state ground, including procedural default.") (citation omitted); *Sloan v. Delo*, 54 F.3d 1371, 1378 (8th Cir. 1995). For procedural default to bar a habeas claim, the state procedural rule must be firmly established and regularly followed. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991) (citations omitted). In addition, the state court must expressly state "that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citations omitted).

"A discretionary state procedural rule" can bar federal habeas review. *Walker v. Martin*, 131 S. Ct. 1120, 1128 (2011) (citation omitted). Furthermore, a rule can be firmly established and regularly followed "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* A petitioner can avoid the state court procedural bar only by demonstrating cause for default and actual prejudice as a result of the violation of federal law or by showing actual innocence (also called the miscarriage of justice exception). *Schlup v. Delo*, 513 U.S. 298, 314–17 (1995).

**B. Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of Hill's habeas claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Eighth Circuit has explained:

A state court decision is "contrary to" clearly established federal law if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." A state court "unreasonably applies" Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) *cert. denied*, 132 S. Ct. 763, (U.S. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

A writ of habeas corpus can also be granted if the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court evidentiary record. *See id.*

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt . . . ." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. *See, e.g.*, *Harrington v. Richter*, 131 S. Ct. 770, 785–86 (2011) (explaining the burdens faced by a federal habeas petitioner seeking relief based

8

on an alleged error by the state court). Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*, and later decisions. *Id.* The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

### C. Grounds One and Two: Fourth Amendment Claims

Hill contends the warrantless entry of police officers into his home, leading to his arrest without probable cause, violated the Fourth Amendment. (Pet. at 4, 6–8). He argues that it was not objectively reasonable for the police officers to believe there was an injured person in need of assistance or a person in need of protection in the home. (*Id.* at 6–8).

*Stone v. Powell* established the appropriate standard of review for Fourth Amendment habeas claims. *Stone v. Powell*, 428 U.S. 465 (1976).

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 482. The record establishes that Hill was given a full and fair opportunity to litigate his Fourth Amendment claims in state court because he was provided a hearing on his pretrial motion to suppress, and he litigated the issues on direct appeal of his conviction. *Hill*, 2010 WL 5290066, at *3–5; (Transcript of February 10-11, 2009 Proceedings, State's Memorandum) [Doc. No. 11 at 19–246].[4] Hill, thus, is not entitled to habeas relief on his Fourth Amendment claims.

---

[4] Docket entry number 11 contains a transcript of the February 10-11, 2009 proceedings and the jury trial. [Doc. No. 11]. The entry contains all of the transcripts in one document so the

### D. Ground Three: Jury Instructions

Hill alleges the trial court erred in its response to the jury's question "if an empty gun is pointed at another person, is this considered use of deadly force?" (Pet. at 5, 9–11); (Transcript of Jury Trial) [Doc. No. 11 at 880]. Hill contends the court should have answered "no" to the jury's question or should have read the entire definition of deadly force that the court provided to the jury earlier. (Pet. at 9–11). Hill contends that "no" was the correct answer to the jury question because pointing an unloaded gun at someone cannot cause death or great bodily harm. (*Id.*).

Furthermore, Hill specifically alleges the court should have read the example provided in the statute that "[t]he intentional discharge of a firearm in the direction of another person *** constitutes deadly force."[5] (Pet. at 9–10). Respondent argues that jury instructions are generally a matter of state law, and habeas claims involving jury instructions are only cognizable if the jury instructions "'constitute a fundamental defect that results in a complete miscarriage of justice or so infects the entire proceeding as to deprive the defendant of a fair trial.'" (State's Mem.) [Doc. No. 10 at 14] (quoting *Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992) (citing *Cupp v. Naughton*, 414 U.S. 141, 147 (1973))). Respondent asserts the trial court's response was a correct statement of law, and furthermore, there was no evidence that Hill's gun was empty.

---

Court, for ease of reference, will refer to the specific name of the transcript it is referring to and provide citations to the CM/ECF pagination not the original pagination of the transcripts.
[5] Although Hill does not cite the statutory section, its text actually provides "For the purposes of this section, 'deadly force' means force which the actor uses with the purpose of causing, or which the actor should reasonably know creates a substantial risk of causing, death or great bodily harm. The intentional discharge of a firearm, other than a firearm loaded with less lethal munitions and used by a peace officer within the scope of official duties, in the direction of another person, or at a vehicle in which another person is believed to be, constitutes deadly force." Minn. Stat. § 609.066(1). Minnesota's Assault in the First Degree Statute, Minn. Stat. 609.221, specifically references the definition of deadly force provided in Minn. Stat. § 609.066(1). Minn. Stat. § 609.221(2)(c)(2).

(*Id.* at 14–15). Thus, Respondent contends Hill's federal constitutional right to a fair trial was not implicated. (*Id.* at 15).

The U.S. Supreme Court has recognized "an 'especially heavy' burden on [a habeas petitioner] who . . . seeks to show constitutional error from a jury instruction that quotes a state statute. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). An ambiguity, inconsistency or deficiency in the instruction does not necessarily constitute a due process violation. *Id.* The petitioner must show that the instruction was ambiguous and that there was "'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 190–91 (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990))). The jury instruction must not be considered in isolation but in the context of the instructions as a whole and the trial record. *Id.* at 191. A slight possibility that the jury misapplied the instruction is not enough, the issue is whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (citing *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147)).

The trial court responded to the jury's question about an empty gun by stating: "Deadly force means force that the actor uses with the purpose of causing, or the actor should reasonably know creates a substantial risk of causing death or great bodily harm." (Transcript of Jury Trial at 880). This response was ambiguous in the sense that the jury's question called for a yes or no answer, and the court responded by rereading part of the instruction the court had given earlier. *See* (*id.*). Nonetheless, the response to the jury's question must be considered in the context of the entire trial record. *Waddington*, 555 U.S. at 191. The facts supporting or detracting from the necessary elements of the crime, including whether the gun was loaded and capable of going off

11

when Hill pointed it at the officers, were the focus of the entire trial. *See* (Transcript of Jury Trial at 247–881). Therefore, it is doubtful the jury applied the trial court's response to the jury's question in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.

Moreover, there is no reason to conclude that the jury likely would have acquitted if the trial court answered "no" to the jury question about an empty gun. As discussed above, the evidence indicated the gun was loaded with at least one bullet, and although the cylinder was unseated, Hill could have seated the cylinder and fired at the officers. *Hill*, 2010 WL 5290066, at *3. The fact that the jury asked a question about an empty gun does not mean the jurors agreed the gun was empty. And, the trial court's response to the jury question did not in any way imply that the answer to the question was "yes." *See* (Transcript of Jury Trial at 880). The response to the jury's question simply left it to the jury to apply the facts to the elements of the crime and draw its own conclusion. Hill has not met the heavy burden of showing error in the jury instruction so infected the trial as to amount to a due process violation.

### E. Ground Four: Ineffective Assistance of Counsel

Hill contends his trial counsel did not maintain sufficient contact with him and did not keep him informed; counsel failed to make a motion to strike the jury based on juror and witness misconduct; counsel failed to make important objections to the jury instructions; counsel failed to argue the element of deadly force and failed to provide material facts in the case; and the result of trial would have been different but for these errors. (Pet. at 5, 12–16). Respondent asserts Hill's ineffective assistance of counsel claims, which he raised in his *pro se* supplemental brief on appeal and in his post-conviction proceeding, are procedurally barred because the state courts had adequate and independent state grounds to reject the claims and uphold the

conviction. (State's Mem. at 15). The state law ground was that Hill waived his ineffective assistance claims because he did not support the claims with argument or legal authority.[6] (State's Mem. at 15–16) (citing *State v. Palmer*, 803 N.W.2d 727, 741 (Minn. 2011)). There is an exception to this procedural rule when "prejudicial error is obvious on mere inspection." (*Id.*)

Upon review of the jury trial transcript, the Court does not find obvious prejudicial error, so as to excuse Hill's failure to brief his ineffective assistance claims in the state courts. Minnesota's procedural bar of claims that are not supported by argument and authority is established and followed regularly. *See, e.g.*, *State v. Palmer*, 803 N.W.2d 727, 741 (Minn. 2011); *State v. Bartylla*, 755 N.W.2d 8, 22–23 (Minn. 2008); *State v. Krosch*, 642 N.W.2d 713, 719–20 (Minn. 2002); *State v. Ture*, 632 N.W.2d 621, 632 (Minn. 2001); *McKenzie v. State*, 583 N.W.2d 744, 746 n.1 (Minn. 1998); *State v. Fisherman*, No. A12-1312, 2013 WL 4504305, at *6 (Minn. Ct. App. Aug. 26, 2013). Hill did not reply to Respondent's contention that his claims are procedurally defaulted.

Hill has not shown cause for the default, and likely could not offer a valid reason why he did not present the state court with any argument or legal authority concerning his ineffective assistance of counsel claims. Where the petitioner has not shown cause to overcome procedural default, the habeas court need not address the prejudice prong. *Leggins v. Lockhart*, 822 F.2d 764, 768 (8th Cir. 1987). Hill's ineffective assistance of counsel claims, therefore, should be denied for these reasons.

---

[6] In Hill's appeal of his post-conviction claims, the Minnesota Court of Appeals stated: "Hill's pro se supplemental brief also contained an ineffective-assistance-of-trial-counsel claim that was not specifically addressed in the opinion affirming his conviction. In this postconviction appeal, Hill presents a laundry list of acts that he claims constituted ineffective assistance of trial counsel, many of which relate to trial strategy. Hill's claims are not supported with facts, authority or any argument about how the outcome of the trial was affected by counsel's challenged conduct and are waived." *Hill*, 2012 WL 3101273, at *2 (citations omitted).

13

F.  Ground V:  Sufficiency of the Evidence

Hill alleges there was no evidence that he used or attempted to use deadly force against a peace officer. (Pet. at 16–18). Hill contends that pointing an inoperable or unloaded handgun at a peace officer cannot create the risk of causing death or great bodily harm. (*Id.* at 16). Hill cites evidence that the firearm cylinder was not properly seated when it was found on the ground, and the gun was not loaded because the bullets were found on the floor next to the opened gun. (*Id.* at 17–18). All witnesses agreed the firearm was inoperable when the cylinder was not properly seated. (*Id.*).

Respondent asserts the Minnesota Court of Appeals' decision was supported by the record because: (1) Hill jumped out of a closet without warning, raised his .44 caliber revolver, assumed a firing stance, and pointed his gun directly at Sergeant Larsen; (2) Larsen believed he was about to be shot; (3) another officer shot Hill with a Taser before Hill could fire his gun; (4) the gun was loaded, the cylinder was closed, and the gun was fully operable. (State's Mem. at 11). Respondent contends that Minnesota law punishes attempts to use deadly force against peace officers "even under circumstances where accomplishment of the actor's purpose is impossible." (*Id.* at 12) (citing Minn. Stat. § 609.17(2)).[7]

U.S. Supreme Court precedent establishes that the Due Process Clause of the Fourteenth Amendment protects against criminal conviction except upon "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "[O]n habeas review, 'a federal court may not

---

[7] Minn. Stat. § 609.17(2) defines when an act constitutes an attempt: "An act may be an attempt notwithstanding the circumstances under which it was performed or the means employed to commit the crime intended or the act itself were such that the commission of the crime was not possible, unless such impossibility would have been clearly evident to a person of normal understanding."

14

overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may only do so if the state court decision was "objectively unreasonable.""" *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (citing *Cavazos v. Smith*, 132 S. Ct. 1, 4 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

The Minnesota Court of Appeals stated, "[w]e will not disturb the verdict 'if the jury, acting with due regard for the presumption of innocence' and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the crime charged." *Hill*, 2010 WL 5290066, at *2 (citing *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004) (quoting *State v. McCullum*, 289 N.W. 2d 89, 91 (Minn. 1979))). Based on evidence creating an inference that Hill pointed a loaded and operable gun at police officers, it was not unreasonable for the Minnesota Court of Appeals to uphold the conviction for attempted use of deadly force against a peace officer. Thus, the state court decision was not contrary to or an unreasonable application of federal law.

Hill alleges the gun was inoperable, preventing him from causing death or great bodily harm to the officers. (Pet. at 16–18). This raises the issue of whether the Minnesota Court of Appeals decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2005)). The Minnesota Court of Appeals held that evidence showed the gun

was loaded "with one round in the position directly next to the firing position" while pointed at the officers. *Hill*, 2010 WL 5290066, at *3. The State introduced evidence that the gun discharged properly when the cylinder was seated. *Id.* Thus, the jury was permitted to infer that Hill could have fired the handgun. *Id.*

The record supports the state court's decision. Witnesses testified Hill came out of a closet without warning, assumed a firing stance and aimed his gun at the officers, and particularly at Sergeant Larson. (Jury Trial Transcript at 347–49, 362, 505–10, 563, 567). Larsen testified he believed Hill was going to shoot him. (*Id.* at 507–08). Officers testified that Officer Rygg shot Hill with a Taser before Hill could fire his gun, and Hill dropped his gun to the ground when he fell. (*Id.* at 353–56, 366–68, 482–83, 513, 533–34, 569–70, 572–74). There was testimony that the gun was found lying on the ground with only one round in the chamber, and the bullet was not in position to go off because the cylinder was not in place or "unseated." (*Id.* at 399–403, 455, 474–76, 481, 540, 594–95). Two live bullets were found near the gun on the ground. (*Id.* at 399–400). The evidence, however, supported a reasonable inference Hill could have readied the cylinder and fired the gun before he was shot with a Taser. (*Id.* at 573–75, 594–95). There was evidence that one bullet was in the position directly next to the firing position in the gun. (*Id.* at 573–75). An expert testified that the gun was operable when the cylinder was in place. (*Id.* at 802–04).

Furthermore, under Minnesota law, an act may be an attempt even if the circumstances "were such that the commission of the crime was not possible, unless such impossibility would have been clearly evident to a person of normal understanding." Minn. Stat. § 609.17(2). Under the deferential habeas standard of review, the state court's decision must be affirmed because reasonable minds could have convicted Hill based on the evidence before the jury.

## G. Certificate of Appealability

If the District Court adopts this Report and Recommendation, Hill must seek a Certificate of Appealability ("COA"), if he wishes to appeal to the Eighth Circuit Court of Appeals. Fed. R. App. P. 22(b). Federal district courts cannot grant a COA unless the habeas petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Armstrong v. Hobbs*, 664 F.3d 1137, 1143 (8th Cir. 2011) *reh'g granted, judgment vacated* (Jan. 23, 2012), *on reh'g*, 698 F.3d 1063 (8th Cir. 2012). "Good faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253." *Kramer v. Kemna*, 21 F.3d 305, 307 (8th Cir. 1994). To make a substantial showing of the denial of a constitutional right, the petitioner must show that the issues to be raised on appeal are debatable among reasonable jurists or that a different court could resolve the issues differently, or that the issues otherwise deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994)).

The issues raised here are straightforward, and it is unlikely, given the very deferential habeas standard of review, that another court would resolve the issues differently. This Court therefore recommends that if the District Court adopts this Report and Recommendation, a COA should not issue.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Hill's application for habeas relief under 28 U.S.C. § 2254, [Doc. No. 1] be **DISMISSED**; and

2. If this Report and Recommendation is adopted, a COA should not issue, and judgment should be entered accordingly.

Dated: November 18, 2013
*s/Steven E. Rau*
Steven E. Rau
United States Magistrate Judge

Under D.Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 2, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.